FULLER *v.* JILLETT.

*(Circuit Court, N. D. Illinois.* February, 1880.)

COVENANT AGAINST ENCUMBRANCES.—A covenant that premises are "free and clear of and from all encumbrances of every kind, whatsoever," is not a covenant that runs with the land.

SAME — UNPAID TAXES — PAYMENT BY COVENANTEE.—Where there has been a breach of such covenant by reason of the non-payment of taxes, the lien of such taxes does not become operative in favor of the covenantee upon his payment of the same.

Demurrer to Bill.

*Mattocks & Mason,* for complainant.

*William H. King,* for defendant.

DRUMMOND, C. J. Willard N. Bruner, in October, 1872, being the owner of some lots of land in Chicago, executed mortgages on them to the plaintiff to secure a loan of $12,000. In them Bruner warranted that the premises were "free and clear of and from all encumbrances of every kind whatsoever," and he also covenanted that he would pay, or cause to be paid, all taxes and assessments levied or assessed on the premises while the debt was unpaid, and in case the property was advertised for sale for such unpaid taxes, and the plaintiff should pay the taxes, that then he should be reimbursed, with 10 per cent. interest. On the fifth of December, 1872, Bruner

sold the land to Jillett, the defendant, who assumed the debt due on the mortgages, with interest from December 9, 1872. The plaintiff, having heard that there were taxes due on the land which were unpaid, on the twelfth of December, 1872, paid $537.03, state and county and South Park taxes of 187ʳ which it is admitted were an encumbrance on the land at th time the mortgages were executed and delivered.

When the debt for which the mortgages were given maturec the defendant offered to pay the amount due, but refused to pay these taxes. By agreement the principal and interest of the debt was received, without affecting any right which the plaintiff might have as against Jillett for the reimbursement of the money paid for taxes; and the bill in this case has been filed to enforce as against Jillett the claim for the payment of these taxes. And to that bill a demurrer has been interposed, which, of course, admits the facts, and the question is whether the claim can be enforced under the circumstances against the defendant.

I am of the opinion that it cannot. Before proceeding to the discussion of the other part of the case it is proper to state that the plaintiff does not claim that the defendant is liable under the covenant which Bruner made, that he would pay or cause to be paid all taxes levied or assessed on the premises while the debt remained unpaid; because, as he admits, these taxes, the subject of controversy here, were not levied or assessed while the debt remained unpaid, but were levied and assessed and became due before the mortgages were executed.

There is no doubt, for we must so assume on the demurrer to the bill, that the taxes which were due were an encumbrance upon the land at the time that the mortgage was executed, and so when the deeds were delivered by Bruner to the plaintiff there was a breach in the warranty which had been made in them, that the premises were free and clear from all encumbrances, and Bruner was and is undoubtedly liable for that breach of the warranty; but does that liability adhere to the land and follow it in the hands of the defendant? I think not. The covenant that the land was free from all encum-

brances was not, according to the general current of American authority, one that run with the land. It was a personal covenant by Bruner, creating a personal liability on his part to the plaintiff; and it is difficult to understand, conceding that there was a lien, because of the existence of the taxes against the land at the time that the property was mortgaged to the plaintiff, when those taxes were paid, no matter by whom, how that lien was a still subsisting lien against the land. The taxes were paid. The tax lien had ceased to exist because there were no taxes due.

In order to sustain the claim of the plaintiff we must hold that he was subrogated to the right of the public, or that the lien which existed by virtue of the taxes became operative in his favor, because there was a liability by virtue of the warranty against Bruner; and that this claim operated as a lien upon the land, to whomsoever it might be transferred. I do not think that principle can be sustained.

I do not understand that any of the authorities cited by the plaintiff's counsel maintain that doctrine. Undoubtedly they hold that, where there is a warranty against encumbrances, the grantee can pay off a tax where a breach of warranty arises in consequence of a tax, and thus discharge the encumbrance, and charge the amount paid to the grantor. It is also true that if these taxes had not been paid by any one they would still operate as a subsisting lien upon the land, and that in whomsoever hands the title might be he would have to pay off the taxes before he could be said to have a title free and clear from all encumbrances.

It would be the same, I apprehend, if, instead of being a lien for taxes, there had been an unsatisfied judgment against Bruner, which operated as a lien upon the land. If the plaintiff had paid off the judgment, I do not understand how he could make the lien of that judgment operate in his favor, because of the claim which he would have against his grantor for a breach of the warranty. The judgment having been paid, the lien against the land would cease to exist. And so I think that the defendant, having agreed to pay the mortgage debt which was due upon the land, but having made no agree-

ment to pay off any encumbrance, would have the right to discharge the debt, with interest, and to compel the plaintiff to resort to his warranty for the enforcement of the claim which he had in consequence of having paid the taxes due. The result is that the demurrer must be sustained and the bill dismissed.